UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WILLIAM A. DYER,

     Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

Civil Action No. 16-cv-00067

JUDGE WAVERLY D. CRENSHAW, JR.

MAGISTRATE JUDGE STEPHANIE
DAWKINS DAVIS

## REPORT AND RECOMMENDATION: PLAINTIFF'S SEALED MOTION FOR JUDGMENT ON THE RECORD (Dkt. 37)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On August 19, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to Administrative Order No. 24 entered on January 29, 2018, this matter was assigned and referred to the undersigned magistrate judge. *See* Text-Only entry dated 1/29/18. This matter is before the Court on plaintiff's motion for judgment on the record. (Dkt. 37). The Commissioner filed a response to plaintiff's motion. (Dkt. 39).

### B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability and disability

insurance benefits on August 20, 2012, alleging disability beginning on June 1, 2011. (Tr. 12).[1] The claim was initially disapproved by the Commissioner on January 28, 2013. (Tr. 13). Plaintiff requested a hearing, and on January 23, 2015, he appeared and testified, without counsel, before Administrative Law Judge (ALJ) Renee S. Andrews-Turner, who considered the case *de novo*. (Tr. 29-57). In a decision dated April 10, 2015, the ALJ found that plaintiff was not disabled. (Tr. 9-24). Plaintiff requested a review of this decision (Tr. 7), and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 7, 2016. (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the record be **DENIED** and that the findings of the Commissioner be **AFFIRMED**.

## II.    THE ALJ'S DECISION

Plaintiff was born in 1970 and was 41 years old, a younger individual, on the alleged disability date. (Tr. 23). Plaintiff has work history as a landscape laborer (heavy unskilled work), construction contractor (light skilled work), a construction painter (medium skilled work), harvest worker (medium unskilled work), fast food

---

[1] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and can be found at Docket Entry 18.

restaurant manager (light skilled work), janitor (medium semi-skilled work), waiter (light, semi-skilled work), and concrete laborer (heavy unskilled work. (Tr. 22).

In a decision dated April 10, 2015, the ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 14). At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder (ADHD). *Id.* At step three, the ALJ concluded that plaintiff's severe impairments did not meet or equal any listed impairment. (Tr. 15-16). The ALJ found that plaintiff had the residual functional capacity to perform full range of work at all exertional levels as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple and detailed instructions; can maintain concentration, pace and persistence for two hours at a time during an eight-hour workday; occasionally interact with the general public, coworkers and supervisors; and can adapt to infrequent change in the workplace.

(Tr. 16). At step four, the ALJ found that plaintiff could perform his past relevant work as a concrete laborer. (Tr. 22). In the alternative, at step five, the ALJ concluded that, based on the vocational expert testimony, plaintiff could perform a significant number of jobs available in the national economy with his RFC. (Tr.

23).  Thus, the ALJ found plaintiff was not disabled under the Act from the application date through the date of the decision.  (Tr. 24).

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If the claimant does not obtain relief during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status. Title XVI benefits are available to poverty stricken adults and children who become disabled. While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

Cir. 2007). F. Bloch, Federal Disability Law and Practice § 1.1 (1984).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the

>national economy that plaintiff can perform, in view of
>his or her age, education, and work experience, benefits
>are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At step five, the Commissioner is required to show that "other jobs in significant

numbers exist in the national economy that [claimant] could perform given [his]

RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20

C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently, and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Diagnoses/Step Two

Plaintiff argues that the ALJ omitted his complete diagnoses from the list of severe impairments, and ignored impairments listed on Tr. 383. More specifically, according to plaintiff, the ALJ ignored the majority of the medical opinions offered by Dr. Gale (citing Tr. 378, 383) and Dr. Nyquist (citing Tr. 368-69), which relate to his diagnoses. Plaintiff contends that the complete diagnoses are vital to any consideration of the severity and consistency of his behavior and testimony regarding his inability to perform work. Plaintiff argues that the ALJ improperly failed to give these opinions controlling weight. Plaintiff also finds fault with the ALJ's decision to give great weight to Dr. Jenaan Khaleeli's opinion in light of the ALJ's failure to give great weight to the assessments on which Dr. Khaleedi relied.[2] Plaintiff says the record shows that Dr. Khaleeli accorded great weight to the GAF score of 54-60 given at Guidance Center. (Tr. 97). Dr. Khaleeli also gave great weight to the 2012 assessments by Kasey Anderson, MSN (Tr. 422-426) and Maggie Harris, LCSW (Tr. 396-407). (Tr. 99). This means, according to

_____

[2] Dr. Khaleedi is a state agency reviewing psychologist who issued a Disability Determination Explanation on May 13, 2013 at the reconsideration level. (Tr. 100).

plaintiff, that the ALJ also must give great weight to their diagnoses and analysis as follows: Axis I- Bipolar II Disorder, Anxiety Disorder NOS, Polysubstance Dependence, Attention Deficit Hyperactive Disorder, Axis IV multiple severe legal, economic, occupational, Axis I- Bipolar II Disorder, Anxiety Disorder NOS, Polysubstance Dependence, Attention Deficit Hyperactive Disorder, Axis IV-multiple severe legal, economic, occupational. (Tr. 405, 424).

The Commissioner maintains, however, that the ALJ properly determined plaintiff's severe impairments. (Tr. 14). The ALJ found that plaintiff's severe impairments were bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder (ADHD). (Tr. 14). According to the Commissioner, plaintiff refers the Court to Tr. 338, which consists of progress notes from the Siloam Family Therapy Center, and an old listing of assessed conditions dated August 26, 2004. (Dkt. 37: Pl.'s Br. at Pg ID 853, citing Tr. 338).[3] Quoting from the Decision, the Commissioner points out that the ALJ explained that these were "remote records and opinions" which "do not reflect the claimant's current functional abilities. As a result the undersigned primarily focused on the records and opinions close in time to the June 1, 2011, alleged onset date." (Tr. 14). According to the Commissioner, the ALJ need only review the "relevant" evidence

---

[3] As noted above, plaintiff actually refers to Tr. 383, not Tr. 338. Tr. 383 is a September 2010 report from Dr. Scott J. Gale.

and these old records were not relevant.  *See* 20 C.F.R. § 404.1527 ("After we review all of the evidence relevant to your claim, including medical opinions…."); 20 C.F.R. § 404.1545(a)(3) (RFC is assessed "based on all of the relevant medical and other evidence" of record).  The Commissioner also suggests that the plaintiff inappropriately focuses on the diagnoses, as opposed to the limitations in functioning.  (Dkt. 37: Pl.'s Br. at Pg ID 853-55, 860).  The ALJ must follow the regulations, and the regulatory focus is on the limitations that arise from an impairment, not what one doctor or another labels a particular condition.  A "mere diagnosis…says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

The Commissioner also points out, regarding the long citation to an article from the Mayo Clinic in plaintiff's brief, that the article does not pertain to plaintiff's individual condition and limitations that were at issue before the ALJ. Instead, the article addresses what a condition could result in for the general population.  The Sixth Circuit recently addressed this issue and concluded that general information about an impairment does not warrant remand. *See Montecalvo v. Comm. of Soc. Sec.*, 2017 WL 2983032, at *5 (6th Cir. July 13, 2017) (Plaintiff submitted some general papers and articles on Gulf War Syndrome but these did not meet the materiality requirement for S6 remand.  Plaintiff failed to demonstrate how these documents were relevant to his specific claim or how

such general articles would affect the ALJ's findings because this evidence "does not relate to Plaintiff personally.").

Furthermore, plaintiff must show prejudice to obtain a remand based on an alleged omission by the ALJ at step two of the sequential evaluation. *See* 20 C.F.R. § 404.1520. As long as the ALJ considers all of an individual's impairments, the "failure to find additional severe impairments…does not constitute reversible error." *Kirkland v. Comm'r of Soc. Sec.*, 528 Fed. Appx. 425, 427 (6th Cir. 2013) (quoting *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. 2007)); *Miller v. Comm'r of Soc. Sec.*, 524 Fed. Appx. 191, 194 (6th Cir. 2013) (ALJ's RFC for simple low stress work adequately took into account other alleged mental deficits). In sum, the Commissioner maintains that the ALJ properly considered the severity of plaintiff's impairments.

At Step 2 of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled."). In order

to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

Sixth Circuit precedent establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation. *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). If the ALJ continues with the remaining steps, any error at Step 2 is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems

severe and those not severe.") (internal quotation marks omitted); *Jackson v. Astrue*, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.). Here, the ALJ continued with the full analysis of plaintiff's mental health impairments. Thus, any error would be harmless. Further, in the view of the undersigned, there is no error given that the only mental health diagnosis identified by plaintiff and not considered by the ALJ was plaintiff's polysubstance abuse, which was deemed to be in "full remission." (Tr. 405, 424). Plaintiff has identified no impairments or other ill-effects from the polysubstance abuse such that the ALJ's failure to consider this diagnosis was harmful. As to any other diagnoses mentioned in plaintiff's records, the ALJ reasonably concluded that those diagnoses were somewhat remote in time to the alleged onset date. And, more importantly, plaintiff does not identify any additional impairments or limitations caused by of these additional mental conditions. Under these circumstances, the undersigned finds no error at Step Two warranting remand and even if there were an error, it was harmless.

 2. Medical opinions

Plaintiff argues that the ALJ erred in evaluating the medical opinions from his therapist, Mr. Hinton, and nurse practitioner, Mr. Moss. While the ALJ stated that she accorded little weight to Mr. Moss and Mr. Hinton's opinions, plaintiff points out that they consulted with, were supervised by, and agreed with by Dr. Linda S. Lundin MD. (Tr. 617). Dr. Lundin also agreed with Debrah Harrah's diagnosis of plaintiff's symptoms worsening and a low GAF score of 54 on 2/28/2013 and on 5/27/2013. (Tr. 451, 514). Dr. Lundin is the supervising and consulting physician for all Volunteer Behavioral Health/Guidance Center treating faculty and staff, yet the ALJ gave no weight to her at all.

The Commissioner maintains that the ALJ properly considered these opinions. (Tr. 20-21). Under the regulations in effect at the time of the decision, a nurse is an "other" or "not acceptable" form of medical information. The regulations describe "acceptable" medical sources as those who may establish whether an individual has a medically determinable impairment. *See* 20 C.F.R. § 404.1513 ("Medical and other evidence of your impairment(s)."). Social Security requests and evaluates opinions from acceptable medical sources, but "other" medical sources (including nurse practitioners, physician assistants, chiropractors, and therapists) may also provide opinions and evidence. *See id.* According to the Commissioner, the ALJ properly evaluated the statements at issue regardless of how they might be characterized. The ALJ gave little weight to both

of these statements. As the ALJ explained, Mr. Moss, the psychiatric nurse practitioner, completed a statement entered into the record as exhibit 10F and dated January 21, 2015. (Tr. 20-21, 636). Mr. Moss said that plaintiff had minimal improvements with medications. (Tr. 636). He seemed to list generic side effects from medications. (Tr. 636). Among other restrictions, Mr. Moss stated that plaintiff had marked functional limitations and that he would miss more than four days of work per month. (Tr. 637). Ms. Hinton, a therapist, provided an opinion entered into the record as exhibit 11F and dated January 23, 2015. (Tr. 20-21, 640). She also stated that plaintiff would have various marked limitations and would miss more than four days of work per month, and that he had made minimal progress towards functioning. (Tr. 642-43). The ALJ found these statements inconsistent with the overall records as well as the specific treatment records. (Tr. 21). The ALJ contrasted the statements with the far less negative treatment record which indicated good focus and participation and normal mental status examinations. (Tr. 21, 597, 606-07, 613-14). The ALJ also commented that it did not seem consistent with the record that plaintiff had minimal improvement considering the frequency of treatment did not increase and plaintiff was never referred to other providers. (Tr. 21, 619, 622-24). According to the Commissioner, the ALJ identified sufficient inconsistencies to support the finding that these opinions were due only "little" weight. Thus, the Commissioner

maintains that the ALJ properly satisfied the obligation to consider these opinions and provide adequate reasoning for discounting them. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 392, 399 (6th Cir. 2014) ("However, we are satisfied that the ALJ properly recognized that Hastings' opinions were "important and should be evaluated" and accordingly considered Hastings' opinions and gave them weight. *Cruse*, 502 F.3d at 541 (quoting SSR 06-03p). The ALJ accordingly satisfied his obligations under the Social Security Act with respect to Hastings' opinions.").

Plaintiff makes a fair point that Dr. Lundin did co-sign some of his mental health treatment records. Several courts have concluded that where a licensed social worker or other unacceptable medical source is working as part of a treatment team and an acceptable medical source has "signed off" on the opinions, they should be evaluated as treating physician opinions. *See e.g.*, *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996) (non-medical source must be integral to team, and the acceptable medical source must undersign her findings); *Keith v. Astrue*, 553 F.Supp.2d 291, 301 (W.D. N.Y. 2008) (ALJ erred and remand required where the ALJ discounted the reports and notes signed by a psychiatrist because they were primarily prepared by a social worker); *Wethington v. Astrue*, 2009 WL 2485395 (W.D. Ky. 2009) (Social worker's records were signed by treating psychiatrist, who would be an "acceptable medical source" and whose opinion may

be entitled to controlling weight under the treating physician rule.).   Under the aforementioned circumstances, the ALJ was directed, on remand, to review the psychiatrist's notes and reports, including any notes by social worker which the psychiatrist co-signed, in accordance with the treating physician rule. *Keith*, 553 F.Supp.2d at 301.

In contrast to the foregoing cases, here, Dr. Linden signed a few office notes prepared by therapists, but did not sign off on the opinions offered by Mr. Moss and Mr. Hinton regarding plaintiff's functionality.  (Tr. 451, 514, 530, 636-639, 640-643).  Indeed, while there is a blank space for Dr. Teresa Boyd's[4] signature on these opinion forms, she did not sign them.  (Tr. 639, 643).  Under these circumstances, the ALJ correctly treated the opinions of Mr. Moss and Mr. Hinton as opinions from a non-acceptable medical source.

"Other sources" include medical sources, such as therapists, which are not "acceptable medical source" under the regulations.  20 C.F.R. § 416.913(d)(1).3 While "Other sources" may provide evidence as to the severity of a claimant's impairment as well as the effects the impairment has on the claimant's ability to work, they "cannot establish the existence of a disability."  *Baker v. Colvin*, 2016 WL 6501361, at *9 (E.D. Tenn. Aug. 22, 2016), report and recommendation

---

[4]  Theresa Boyd, PhD appears to be a supervising medical provider and would also qualify as an "acceptable medical source."  (Tr. 419, 639, 643).

adopted, 2016 WL 6496239 (E.D. Tenn. Nov. 2, 2016) (citing *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 392, 398 (6th Cir. 2014). Accordingly, opinions rendered by "other sources" are not subject to any special degree of deference. *Noto v. Comm'r of Soc. Sec.*, 632 Fed.Appx. 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record."). The undersigned finds no error in the weight accorded to the opinions of Mr. Moss and Mr. Hinton.

Significantly, the ALJ's RFC findings are fully consistent with and support by Dr. Khaleedi's opinions set forth in the May 13, 2013 Disability Determination Explanation. (Tr. 91-103). Dr. Khaleedi found that plaintiff had some moderate limitations in the areas of concentration, persistence or pace (the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods), some moderate limitations in social interactions (the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes), and some moderate limitations in his adaptive abilities (the ability to respond appropriately to changes in the work setting). (Tr. 99-100). Based on this assessment, Dr. Khaleedi concluded that plaintiff could understand and remember simple, detailed, and multi-step but not executive level tasks; plaintiff could concentrate and persist within the other restrictions identified above; plaintiff could interact appropriately with the public, co-workers, and supervisors occasionally during the workday within the other restrictions identified; and plaintiff could adapt to infrequent change within the other restrictions identified. (Tr. 100). The ALJ's RFC appears to accommodate plaintiff's limitations in concentration persistence and pace in the ALJ's conclusion that plaintiff can understand, remember and carry out simple and detailed instructions and can maintain concentration, pace and persistence for two hours at a time during an eight-hour workday. The ALJ's RFC also accommodates plaintiff's social limitations by limiting him to occasional interaction with the general public, coworkers and supervisors. And, the ALJ's RFC also accommodates plaintiff's adaptive limitations by concluding that he could only adapt to infrequent change in the workplace. Thus, the RFC is consistent with Dr. Khaleedi's opinions and Dr. Khaleedi is not only an acceptable medical source, but is also a "highly qualified . . . expert[]" in the evaluation of disability under the Act. 20 C.F.R. § 404.1527(e)(2)(I).

### 3. Listings

Plaintiff states that he meets the criteria for listing 12.04 (affective disorder) and listing 12.06 (anxiety disorder) which requires, in relevant part, two "marked" limitations in functioning or one "marked" limitation plus repeated episodes of decompensation. Plaintiff relies on the Horton and Moss opinions, which include marked impairments and episodes of decompensation. On the other hand, the Commissioner contends that the ALJ fully explained, with specific citations to the record, why plaintiff did not have the required limitations or periods of decompensation. (Tr. 15-16). The Commissioner suggests that plaintiff may misunderstand the term "decompensation" as used in SSA's regulations. Episodes of decompensation as provided for in the regulations are of extended duration, meaning at least two weeks, and will be inferred from fairly significant evidence, such as "e.g. hospitalizations, placement in a halfway house, or a highly structured and directing household." 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.00C4. And, while plaintiff relies on the opinions of Mr. Horton and Mr. Moss, the ALJ explained that these opinions were due "little" weight. (Tr. 21).

The undersigned agrees with the Commissioner's analysis. Plaintiff's argument relied on the opinions of Mr. Moss and Mr. Hinton, which the undersigned has already concluded were properly accorded little weight by the ALJ. Plaintiff also relies on other opinion evidence from Dr. Khaleedi, as

described above, which in turn merely points to other opinions or notations of plaintiff's diagnoses and GAF scores. As discussed in detail above, the mere assignment of a diagnosis does not inform the ALJ or the Court of how plaintiff is impaired by that diagnosis. Finally, plaintiff's argument that the increase in his Lamictal dose and the addition of Strattera shows that he satisfied the definition of "decompensation" is not persuasive. The addition of or adjustments to medication, without more, does not show that plaintiff required hospitalizations, placement in a halfway house, or a highly structured and directing household. Indeed, nothing in this records suggests that plaintiff experienced episodes of decompensation as described in the regulations. Thus, plaintiff's claim of error regarding the Listings is without merit.

### 4. Credibility

As part of this determination, the ALJ also evaluated plaintiff's subjective complaints and found that they were not entirely credible. (Tr. 17). "Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th

Cir. 2003).  Thus, an ALJ's credibility determination will not be disturbed "absent

compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ

is not required to accept the testimony of a claimant if it conflicts with medical

reports, the claimant's prior statements, the claimant's daily activities, and other

evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th

Cir. 1997).  Rather, when a complaint of pain or other symptoms is at issue, after

the ALJ finds a medical condition that could reasonably be expected to produce the

claimant's alleged symptoms, she must consider "the entire case record, including

the objective medical evidence, statements and other information provided by

treating or examining physicians . . . and any other relevant evidence in the case

record" to determine if the claimant's claims regarding the level of his pain are

credible.  SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R.

§ 416.929.  "Consistency between the plaintiff's subjective complaints and the

record evidence tends to support the credibility of the [plaintiff], while

inconsistency, although not necessarily defeating, should have the opposite

effect."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir.

2011).

Plaintiff first argues that the ALJ did not consider the side effects of his

medications.  Yet, as the Commissioner points out, plaintiff notes only potential

side effects common to the medications he was taking, not to actual side effects

documented in the record. A claimant asserting debilitating medicinal side effects must present objective medical evidence to support his claim. *See Farhat v. Sec'y of Health & Human Servs.*, 972 F.2d 347, 1992 WL 174540, at *3 (6th Cir. July 24, 1992) (unpublished) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986)). Plaintiff has not pointed to any objective medical evidence to support his assertion of disabling side effects of his medication. *See Essary v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 662, 665 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians."); *Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004) (alleged medication side effects of drowsiness, nausea, and blurred vision "not documented in the record"). On April 13, 2013, in his adult function report, plaintiff reported only side effects of dry eye and a depressed immune system. (Tr. 237). Plaintiff's medical records showed no side effects reported in June 2012. (Tr. 427, 429). While Mr. Moss described side effects in an opinion, the ALJ found that this opinion as a whole was inconsistent with the medical record and as noted, there is no evidence that plaintiff ever reported side effects to a treating provider. (Tr. 21, 636). Indeed, a September 2014 report by Mr. Moss shows "no SE's" a common abbreviation for no side effects. (Tr. 578). A 2015 report from Mr. Moss showed that plaintiff had some

side effects in the past, but medications were adjusted. (Tr. 625). In the view of the undersigned, plaintiff has not established medication side effects in this record that would have affected his ability to perform work activities.

Plaintiff argues that the ALJ did not properly address his activities of daily living (alternately "ADL") and that an ability to perform certain tasks does not automatically equate to show that he can work. According to the Commissioner, the ALJ correctly used plaintiff's alleged limitations to compare them to the record - a proper evaluation of plaintiff's subjective complaints. Further, the ALJ did not reach a finding that plaintiff's ADL meant that he could work, but rather mentioned plaintiff's activities in the context of showing inconsistency. As the Commissioner points out, the ALJ may consider daily activities as one factor in the evaluation of subjective complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 Fed. Appx. 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). Here, the Commissioner acknowledged that plaintiff had some restrictions in his activities of daily living and had motivation issues. (Tr. 15). Yet, the ALJ also observed that he did small household chores, went to AA meetings, did the laundry, and cared for his children and his dog. The ALJ concluded that plaintiff retained the ability to perform some activities of daily

living. Nothing in the ALJ's analysis, however, suggests that the ALJ equated his activities of daily living with the ability to work full-time. Thus, the undersigned finds no error.

Plaintiff also disputes the ALJ's characterization of his cancelled appointments, stating that the cancellations actually demonstrate that he suffers from a more severe mental illness. According to the Commissioner, the ALJ properly contrasted plaintiff's report of worsening symptoms with cancelled appointments during 2013 and 2014. (Tr. 19). The Commissioner acknowledges that plaintiff's explanation could make sense in some situations, but here, the ALJ showed that plaintiff's records showed that his medications were helpful and that he did not need them changed. (Tr. 19). Moreover, the ALJ also focused on plaintiff's records of fairly normal mental status examinations during this time period. (Tr. 18, 580-614). "For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself. *See Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (listing cases recognizing that a mentally ill person's noncompliance with treatment "can be ... the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (citations, internal quotation marks, and brackets omitted)." *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 283 (6th Cir. 2009). The Commissioner maintains, however, this is not the situation here. Rather, as the ALJ showed, the record

reflected that plaintiff's treatment was effective and his mental status examinations were favorable.

In the view of the undersigned, there is evidence in the record that plaintiff cancelled at least some appointments based on reasons other than his mental illness. (Tr. 489, client cancelled appointment because daughter was in the hospital; Tr. 485, client cancelled appointment because he was in Ohio and would reschedule when he returned.). The other cancellations do not reveal any reasons, and nothing else in the record suggests that plaintiff's mental illness prevented him from obtaining treatment on a regular basis. Indeed, the record suggests that plaintiff regularly sought treatment for his mental illness. Given that this was but one factor the ALJ relied on in his credibility analysis, which is otherwise supported by substantial evidence, the undersigned finds no basis to disturb the ALJ's credibility determination.

### 5. VE testimony

Plaintiff argues that the ALJ erred in stating that vocational expert testimony supported the finding that he could work. He principally points to his own testimony to support his challenge to reliance on the VE testimony, pointing out that the VE testified in response to hypotheticals posed after the first hypothetical that if a claimant were limited to the extent of plaintiff's testimony, then such claimant would be rendered unemployable. However, as discussed above, the ALJ

did not find plaintiff's testimony concerning his limitations to be entirely credible and assessed an RFC based on the credible evidence in the record. Thus, it is apparent that the ALJ did not rely on Hypotheticals 2 and beyond, but rather on Hypothetical 1, which incorporated the limitations stated in plaintiff's RFC. (Tr. 22, 25-26). Because the hypothetical question to the vocational expert on which the ALJ relied restates the RFC, and because, as discussed above, the RFC accurately portrays plaintiff's limitations, there is no error at Step Five. (Tr. 16, 52-53). *See Hatton v. Comm'r of Soc. Sec.*, 2018 WL 1278916, at *8 (E.D. Mich. Feb. 14, 2018), report and recommendation adopted, 2018 WL 1254948 (E.D. Mich. Mar. 12, 2018) (Where the hypothetical question to the vocational expert restated the RFC and the RFC accurately portrayed the plaintiff's limitations, there was no error at Step Five.); *Sellers v. Berryhill*, 2018 WL 989563, at *6 (E.D. Tenn. Jan. 22, 2018), report and recommendation adopted, 2018 WL 988084 (E.D. Tenn. Feb. 20, 2018) ("Having found that substantial evidence supports the ALJ's RFC determination, the Court finds the hypothetical question posed to the vocational expert, and the ALJ's reliance on the vocational expert's response, was appropriate and constitutes substantial evidence at step five that other jobs exist in the national economy that the Plaintiff can perform."). Thus, the ALJ was entitled to rely on the VE's testimony, which provides substantial evidence for the ALJ's Step Five determination.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the record be **DENIED** and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 31, 2018

s/Stephanie Dawkins Davis
STEPHANIE DAWKINS DAVIS
UNITED STATES MAGISTRATE JUDGE
SITTING BY SPECIAL DESIGNATION